## LARSEN et al. v. BROOKLYN DAILY EAGLE.

(Supreme Court, Appellate Division, Second Department. December 11, 1914.)

1. LIBEL AND SLANDER (§ 33*)—DAMAGES IMPLIED IN LAW.
    If an alleged libelous article is not defamatory in itself, damage is not implied in law.
    [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 112, 277; Dec. Dig. § 33.*]

2. LIBEL AND SLANDER (§ 89*)—NATURE OF LIBEL—MANUFACTURED ARTICLE.
    Where a libel or slander is of a manufactured article, and does not directly impeach the integrity, knowledge, skill, diligence, or credit of plaintiff, the words are not actionable at law, unless special damage is alleged and proved; and a general allegation of loss of customers is not sufficient to enable plaintiff to show a particular injury.
    [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 213, 214; Dec. Dig. § 89.*]

3. LIBEL AND SLANDER (§ 97*)—COMPLAINT—DEMURRER.
    A demurrer to the complaint in an action for libel admits the truth of the allegations of the complaint, and also every inference that can be fairly and legitimately drawn from the words used in the libel.
    [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 234–236; Dec. Dig. § 97.*]

4. LIBEL AND SLANDER (§ 19*)—CONSTRUCTION OF LIBEL.
    Words used in an alleged libelous article are to be taken in the sense which is most obvious and natural, and according to the idea that they are calculated to convey to those to whom they are addressed.
    [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 98, 99; Dec. Dig. § 19.*]

5. LIBEL AND SLANDER (§ 9*)—MANUFACTURED ARTICLE—WORDS LIBELOUS PER SE.
    Where an alleged libelous article stated that ice cream manufactured by plaintiffs was sold at a certain store, that a child eating some of it within a few hours was seized with convulsions and died, that it was believed that the ice cream was directly responsible for the child's death, and that four other children had been taken ill, one of them seriously, after eating ice cream at the same place, etc., it was libelous per se, as

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

implying that plaintiffs were intentionally and continuously placing injurious ingredients in their cream.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 86–90; Dec. Dig. § 9.*]

Jenks, P. J., and Rich, J., dissenting.

Appeal from Special Term, Kings County.

Action by Thomas Larsen and another against the Brooklyn Daily Eagle. From an order sustaining a demurrer to the complaint, plaintiffs appeal. Reversed, and demurrer overruled, with leave to answer.

### Statement of Facts.

On July 5, 1912, defendant published of and concerning the plaintiffs the following article, alleged to be false and defamatory:

July 5th, 1912—Friday.

Ate Ice Cream Cone: Died.

Coroner to Inquire into Death of Four Year Old Gertrude Kenna.

An investigation will be conducted by the coroner into the death of four year old Gertrude Kenna, daughter of Joseph Kenna, a plumber, of 992 Bergen street, who died yesterday within forty-eight hours after she had eaten an ice cream cone. She was buried from her mother's home this afternoon after services which were conducted by Father Meehan of St. Teresa's Roman Catholic Church, Sterling place and Classon avenue.

On Tuesday morning her older sister, May, who is 19, took Gertrude to a store at Franklin and St. Marks avenues, and bought her the cone. At 3 o'clock on Wednesday morning the child was seized with convulsions. Dr. J. Madden, of Schermerhorn street, was summoned, but he was unable to do anything for her. She died yesterday morning at 9 o'clock.

Dr. Madden instructed the shopkeeper to put aside some of the cream which he sold the child in order that it might be analyzed. It is believed that the ice cream may be directly responsible for the child's death. Four other children have been taken ill after eating ice cream in the same place and one of them who lives next door to the shop has been seriously ill.

The ice cream is manufactured by the Neapolitan Ice Cream Company which is owned by Larsen & Johansen.

In this action, brought to recover damages for libel, defendant demurred upon the ground that the complaint does not state facts sufficient to constitute a cause of action. Plaintiffs thereupon brought on for hearing, as a contested motion, the issues of law thus raised. From an order sustaining the demurrer, plaintiffs appeal.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

Walter Jeffreys Carlin, of New York City, for appellants.
Jackson A. Dykman, of Brooklyn, for respondent.

BURR, J. [1, 2] If the article complained of is not defamatory of itself, damage is not implied in law. Reporters' Ass'n v. Sun Printing & Pub. Ass'n, 186 N. Y. 437, 443, 79 N. E. 710. "Where the libel or slander is of a manufactured article, and does not directly impeach the integrity, knowledge, skill, diligence, or credit of the plaintiff, the words are not actionable at law unless special damage be alleged and proved, and a 'general allegation of loss of customers is

not sufficient to enable the plaintiff to show a particular injury.'" Marlin Firearms Co. v. Shields, 171 N. Y. 384, 64 N. E. 163, 59 L. R. A. 310.

[3, 4] A demurrer admits the truth of the allegations of the complaint, and also admits every inference that can be fairly and legitimately drawn from the words used therein. The general rule of construction is that words are to be taken in the sense which is most obvious and natural, and according to the idea that they are calculated to convey to those to whom they are addressed. Morse v. Star Co., 118 App. Div. 256, 103 N. Y. Supp. 496; Rossiter v. New York Press Co., Limited, 141 App. Div. 339, 126 N. Y. Supp. 325.

[5] So construed, the article complained of fairly imports that ice cream was sold at a store on the corner of Franklin and St. Marks avenues, in the borough of Brooklyn; that a child eating some of the ice cream so manufactured and sold, within a few hours thereafter, was seized with convulsions and died; that it was believed that the ice cream was directly responsible for the child's death; that four other children had been taken ill, one of them seriously, after eating ice cream at the same place; and that the said ice cream was manufactured by plaintiffs. We think that these words are libelous per se. "Any written words are defamatory which impute to the plaintiff that he has been guilty of any crime, fraud, or dishonesty, * * * or which have a tendency to injure him in his office, profession, calling, or trade. And so, too, are all words which hold the plaintiff up to contempt, hatred, scorn, or ridicule, and which, by thus engendering an evil opinion of him in the minds of right-thinking men tend to deprive him of friendly intercourse and society." Newell on Slander & Libel (3d Ed.) p. 43.

Ordinarily a number of persons would not be made ill, and in one instance such illness be followed by death, after consuming an article of food, and directly in consequence thereof, unless such food contained injurious ingredients. While such ingredients may enter into the composition in a single instance without involving evil conduct on the part of the manufacturer, where it is repeatedly done but one inference may be drawn, and that is that the consequence is the result of deceit and malpractice on his part. So construed, this article is more than a libel upon the thing manufactured; it is a reflection upon the honesty and integrity of the manufacturer. In Kennedy v. Press Publishing Co., 41 Hun, 422, relied on by respondent in this case, the court say:

"A libel on a thing may constitute a libel on a person. Thus to say of a brewer that he adulterates his beer would be a libel upon him in his trade, not because of the allegation that the beer was bad, but because the language would import deceit and malpractice on the part of the brewer."

If this is true at common law, much more is it the case when the statutory provisions respecting the sale of impure or adulterated food are considered. Agricultural Law (Consolidated Laws, c. 1 [Laws 1909, c. 9]) §§ 200, 201. By this act:

"No person or persons, firm, association or corporation shall within this state, manufacture, produce, sell, offer or expose for sale any article of food which is adulterated or misbranded within the meaning of this article."

Ice cream is included within its definition of food:

"In the case of confectionery an article shall be deemed to be adulterated: * * * If it contains * * * any ingredient which may render such article injurious to the health of the person consuming it."

If the article complained of had simply charged the commodities with being worthless, but not unwholesome, they would not have been actionable per se. In the case at bar, the charge is much broader than that.

We think that the order appealed from should be reversed, with $10 costs and disbursements, and that the demurrer interposed by defendant should be overruled, with costs, with leave to the defendant, within 10 days after service of a copy of the order to be entered herein, to withdraw said demurrer and answer the complaint upon payment of costs.

THOMAS and STAPLETON, JJ., concur. JENKS, P. J., and RICH, J., dissent, on the authority of Kennedy v. Press Publishing Co., 41 Hun, 422, Marlin Firearms Co. v. Shields, 171 N. Y. 384, 64 N. E. 163, 59 L. R. A. 310, and Dooling v. Budget Publishing Co., 144 Mass. 258, 10 N. E. 809, 59 Am. Rep. 83.